# In the United States Court of Federal Claims

No. 17-787C
(Filed: October 17, 2017)
(Re-filed: October 27, 2017)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| FREEALLIANCE.COM, LLC, | Bid protest; claim for reinstatement to agency evaluation; FAR 16.301(a)(3); unequal treatment. |
| *Plaintiff*, | |
| v. | |
| THE UNITED STATES OF AMERICA, | |
| *Defendant*. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Matthew Thomas Schoonover*, Lawrence, KA, for plaintiff.

*Delisa Maria Sanchez*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, for defendant.

OPINION

BRUGGINK, *Judge*.

This is a pre-award bid protest by FreeAlliance.com, LLC ("FreeAlliance") of its exclusion from further consideration by the National Institute of Health ("NIH") under request for proposals no. NIHJT2016015 ("RFP"). NIH excluded plaintiff for failure to comply with the requirements of RFP Section L.3.1.h, specifically the requirement of a verification on

---

[1] This opinion was originally issued under seal pursuant to the protective order entered in this case. The parties timely offered joint proposed redactions. We adopt the parties' proposed redactions because we find them to be appropriate. Those redactions are indicated herein with brackets.

letterhead providing that the accounting system had been audited and determined adequate for determining costs applicable to this contract in accordance with the Federal Acquisition Regulation ("FAR"), 48 C.F.R. § 16.301–3(a)(1) (2016).

The parties have filed cross-motions for judgment on the administrative record. The matter is fully briefed, and oral argument was held on October 10, 2017. Because the government was not arbitrary and capricious in its evaluation and did not treat FreeAlliance's proposal unequally, we grant the government's cross-motion for judgment on the administrative record and deny plaintiff's motion.

## BACKGROUND

The Office of Management and Budget has designated NIH as an Executive Agent for government-wide IT acquisitions, authorizing it to award and administer the Chief Information Officer-Solutions and Partners 3 ("CIO-SP3") Small Business Government-Wide Acquisition Contract ("GWAC"). Administrative Record ("AR") 370. The CIO-SP3 GWAC is a ten-year Indefinite Delivery/Indefinite Quantity Contract providing Information Technology ("IT") solutions and services. NIH issued the RFP on March 14, 2016 pursuant to the CIO-SP3 GWAC.

The RFP requirement at issue here is verification of an adequate accounting system found in RFP Section L.3.1.h. It stated that an offeror "must have verification . . . of an accounting system that has been audited and determined adequate for determining costs applicable to this contract in accordance with FAR 16.301-3(a)(1)."[2] AR 496. Verification was necessary because the contract could require contractors to respond to cost reimbursement task orders.

---

[2] FAR part 16.301-3(a)(1) provides that "[a] cost reimbursement contract may be used only when "[t]he factors in 16.104 have been considered . . . ." Those factors include the adequacy of the contractor's accounting system to "ensure that the contractor's accounting system will permit timely development of all necessary cost data in the form required by the proposed contract type . . . ." FAR 16.104(i). Additionally, FAR part 16.301-3(a)(3) reiterates that a cost reimbursement contract may not be used unless "[t]he contractor's accounting system is adequate for determining costs applicable to the contract or order."

NIH authorized offerors to provide verification by any one of four sources: (1) the Defense Contract Audit Agency ("DCAA"); (2) the Defense Contract Management Agency ("DCMA"); (3) any federal civilian audit agency; or (4) a third-party Certified Public Accounting ("CPA") firm. In the event any member of a CTA relied on a third-party CPA, the verification had to be on the letter head of the third-party CPA and certified by a CPA. Finally, the verification instruction provided that the proposal must include:

> [A] contact name and contact information (i.e., phone number, address, email address) of its representative at its cognizant DCAA, DCMA, federal civilian audit agency, or third-party accounting firm and submit, if available, a copy of the Pre-Award Survey of Prospective Contracting Accounting System (SF 1408), provisional billing rate, and/or forward pricing rate agreements.

AR 496.

The RFP provided that offerors were permitted to form contractor team arrangements ("CTA") as defined by FAR part 9.601.[3] The offeror forming a CTA would include with its proposal "the information required under subpart (1) of this section, 'Instructions regarding FAR 9.601(1) CTAs," including a "verification of an adequate accounting system." AR 493-96. Each member of the CTA was individually required to provide verification of an adequate accounting system. "Failure to do so will result in an unacceptable rating." AR 496.

The RFP also stated, "The Government intends to evaluate proposals and award a contract without discussion with Offerors (except clarifications as described in FAR 15.306(a)). . . . The government reserves the right to conduct discussions if the Contracting Officer later determines them to be necessary."[4] AR 483-84. RFP Section M.1.3 reiterated, "The Government

---

[3] A CTA is "an arrangement in which (1) [t]wo or more companies form a partnership or joint venture to act as a potential prime contractor; or (2) [a] potential prime contractor agrees with one or more other companies to have them act as its subcontractors under a specified Government contract or acquisition program." FAR 9.601.

[4] The RFP defined discussions as "negotiations that occur after establishment of the competitive range that may, at the Contracting Officer's discretion, result in the Offeror being allowed to revise its proposal." AR 480.

reserves the right to award contracts without discussions." AR 504.

*Evaluation of Proposals*

NIH evaluated proposals in two phases. The first phase of evaluation was compliance with four "Go/No-Go requirements." AR 503. The first two Go/No-Go requirements are at issue in this claim:

> During Phase 1, the Government will evaluate proposals using the following four (4) Go/No-Go requirements:
>
> 1) Compliant Proposal - If the proposal does not contain the required documents, the Government may deem the proposal to be "unacceptable" and ineligible for further consideration for award.
>
> 2) Verification of an Adequate Accounting System - The Government will evaluate evidence that the Offeror, and all CTA members (if applicable) have an adequate accounting system in accordance with FAR 16.301-3(a)(1), as required under Section L.3.1.h. If the Offeror and all CTA members (if applicable) fail to furnish verification of an adequate cost accounting system will result in an "unacceptable" rating, the proposal will be determined "Unacceptable" and ineligible for further consideration going forward.
>
> 3) Factor 1 – Subfactor 1 – Task Area 1, IT Services for Biomedical Research, Health Sciences, and Healthcare . . . .
>
> 4) Factor 2 – Subfactor 1 – Domain-Specific Capability in a Health-Related Mission . . . .

AR 503.

The second phase of evaluation was assessing proposals using a best value methodology, including price and non-price factors. AR 506-13. Phase two is not at issue in this protest.

*FreeAlliance's CTA & Proposal*

FreeAlliance formed a FAR part 9.601(1) CTA with HealthTech

4

Solutions LLC ("HealthTech") and Nish Consulting, Inc. ("Nish"), on March 23, 2016, which qualified FreeAlliance's proposal for HUBZone consideration. FreeAlliance submitted a proposal on May 13, 2016. The agency received 552 proposals of which seventy were HUBZone proposals, such as the FreeAlliance proposal.[5]

In its CTA documents, FreeAlliance designated itself the Team Lead for the CTA. Additionally, FreeAlliance stated it would be [

] AR 654. FreeAlliance included in its proposal a DCAA "Independent Audit Report on FreeAlliance LLC's Preaward Accounting System Design." AR 666. The DCAA report stated, [


] AR 668. The report listed the capabilities of the FreeAlliance accounting system, including but not limited to [



] AR 674.

Neither HealthTech nor Nish [             ]. Instead, for HealthTech and Nish, the FreeAlliance CTA chose to use a third-party CPA to verify their accounting systems. Neither verification was submitted on a third-party CPA letterhead. Instead, both verifications were on a brief form, not furnished by the agency. The form recites that "[i]n support of the CIO-SP3 Ramp On proposal, the below company has been or is proposed as part of the Contractor Team Arrangement. Determination of compliant and adequate accounting system is marked necessary for performance under this subcontract. This form or representative certification is therefore [required]." AR 675-76.

In section one, the HealthTech verification provided the name, title, signature, and contact information for a HealthTech representative. Form

---

[5] To facilitate awards to small business concerns under the RFP, the contracting officer was allowed to divide offerors into groups based on their socio-economic categories and to make award decisions based on a separate evaluation of each offeror in a group. In this instance, the agency divided the HUBZone offerors into a group and the FreeAlliance CTA was evaluated during NIH's review of HUBZone proposals.

language in section two recited, [
                              ] and, [
          ]. AR 675. In section three, form language provided [
                                        ] however, a third-party accounting firm review was conducted and the accounting system found to be adequate." *Id.* The form listed [                         ] as the "Auditor" with a name, title, signature, and contact information for a point of contact in section three. A footnote on the form indicated that "Healthtech Solutions' accountant [                 ] utilizes a DCAA compliant version of [      ] and HealthTech has purchased a DCAA compliant time keeping system from [ ]. Additionally, HealthTech has engaged [
                    ] to conduct a third-party review of the design of accounting system controls in place." *Id.*

Nish's verification used the same form: it began with the name, title, signature, and contact information for a point of contact at Nish in section one. The form [
                                                    ] AR 676. Nish did not provide any [
     ] In section three, the form language reflected that [
                                     ] however, a third-party accounting firm review was conducted and the accounting system found to be adequate." *Id.* The form listed [                     ] as the "Auditor" with a name, title, signature, and contact information for a point of contact. Nish's verification did not include supplemental notes.

*NIH Phase One Evaluation: FreeAlliance Eliminated*

Upon receiving the proposals, NIH began evaluating HUBZone offerors under the phase one Go/No-Go requirements. As part of the agency evaluation, NIH asked offerors that proposed as a CTA whether they proposed as a FAR part 9.601(1) or 9.601(2) CTA. An agency evaluates a FAR part 9.601(1) CTA as one team, evaluating each member's qualifications. On the other hand, in a FAR part 9.601(2) CTA, the agency will only evaluate the prime contractor's qualifications. FreeAlliance replied that it proposed as a FAR part 9.601(1) CTA. NIH evaluated each member of the CTA based on the four Go/No-Go requirements, including the verification of an adequate accounting system.

NIH gave the FreeAlliance proposal an "unacceptable" rating based on (1) the failure of its two CTA members to submit verifications on CPA

letterhead and (2) their failure to verify that the accounting system "has been audited and determined adequate for determining costs applicable to the contract in accordance with FAR 16.301-3(a)(1) as is required." AR 807.43.

The agency stated that FreeAlliance provided its own forms with a CPA signature and contact information, but those forms were not on letterhead of a third-party CPA. NIH noted that the verification "simply stated that the accounting system was found to be adequate; it does not state that the accounting has been audited and determined adequate for determining costs applicable to the contract in accordance with FAR 16.301-3(a)(1) as is required." AR 807.43. Thus, NIH wrote, "[i]n accordance with section M.2.a(2), the Agency finds the proposal unacceptable and ineligible for award." *Id.* NIH informed FreeAlliance of its elimination from the evaluation process on August 3, 2016.

*NIH Treatment of Other Offerors*

Plaintiff alleges that NIH evaluated offerors unequally during its review of the four Go/No-Go requirements, deeming other deficient verifications as acceptable or engaging in discussions. In its briefing, plaintiff relies on the following phase one evaluations to demonstrate unequal treatment.

[     ] submitted a verification of adequate accounting system that was not on CPA firm letterhead and that was not signed by a CPA. Instead, [             ] submitted a Standard Form ("SF") 1408 prepared by [         ] third-party CPA. NIH marked [       ] acceptable for the Go/No-Go requirements factor two verification of an adequate accounting system.

[     ] did not reference FAR part 16.301-3(a)(1) nor did it use the language "audited or reviewed" in its verification of adequate accounting system. NIH marked [         ] acceptable for the Go/No-Go requirements factor two verification of an adequate accounting system. NIH is currently revisiting its assessment of the four Go/No-Go requirement factors for [       ] as the consequence of a still-pending GAO protest.

[                    ] faxed a verification of adequate accounting system certification form from a third-party CPA that was not on CPA firm letterhead. NIH nevertheless marked [              ] acceptable for the Go/No-Go requirements factor two

7

verification of an adequate accounting system. Despite NIH marking [          ] verification acceptable, NIH ultimately deemed the [       ] CTA unacceptable under the Go/No-Go requirements factor one, because it failed to submit the required CTA agreements.

[                    ] did not reference FAR part 16.301-3(a)(1) in its verification of adequate accounting system and did not provide any substantive verification in its submission. NIH marked [          ] acceptable for the Go/No-Go requirements factor two verification of an adequate accounting system. Yet [     ] CTA, like [     ], was determined unacceptable for Go/No-Go factor one for overall compliance. NIH now takes the position that the accounting verification submitted by [   ] was in fact inadequate.

A number of offerors' verifications of an adequate accounting system did not explicitly cite FAR part 16.301-3(a)(1) in their verification. Yet NIH marked the following offerors acceptable for the Go/No-Go requirements factor two verification of an adequate accounting system: [

].

Several offerors' verifications of an adequate accounting system were signed by the CPA firm rather than signed by a CPA. Nevertheless, NIH marked these offerors acceptable for the Go/No-Go requirements factor two verification of an adequate accounting system: [

]. On the other hand, [          ] and [                    ] submitted verification of an adequate accounting system on an individual CPA's letterhead rather than a CPA firm's letterhead. NIH also marked these offerors acceptable for the Go/No-Go requirements factor two verification of an adequate accounting system. Shivoy submitted a duplicative SBA Program Representation form rather than a verification of adequate accounting system on any letterhead. NIH marked Shivoy's verification acceptable.

Still other offerors received a "Go–with clarification" rating under Go/No-Go requirement factor one overall compliance, which plaintiff argues also demonstrates unequal treatment or NIH engaging in improper discussions. Among these offerors, [                              ] did not provide a DUNS number as required by the RFP prior to award. [                              ]

failed to state that the replacement of a CTA member is subject to government approval. [

] did not acknowledge Amendment 0004 as required by the RFP. [    ] failed to acknowledge agreement with the RFP's terms, conditions, and provisions. [      ] did not include the 360-day acceptance period in their offers.

Finally, NIH requested the CPA license number of [
] verifying CPA due to NIH questioning whether he was in fact a CPA. NIH marked [            ]    acceptable    for    the    Go/No-Go requirements factor two verification of an adequate accounting system.

*Subsequent Proceedings*

FreeAlliance filed a protest at the Government Accountability Office ("GAO") on August 15, 2016. FreeAlliance argued that the agency's exclusion of its proposal amounted to a non-responsibility decision that should have been referred to the Small Business Administration. On November 10, 2016, GAO denied the protest. *AttainX, Inc.; FreeAlliance, LLC*, B-413104.6, 2016 CPD ¶ 330 (Comp. Gen. Nov. 10, 2016). GAO found:

> [T]he agency's elimination of [FreeAlliance's proposal] from further consideration was not based on any evaluated problems with the accounting systems of the respective CTA members . . . . Rather the record shows that NIH rated the proposals unacceptable based on the fact that both protestors failed to submit the specific documentation required by the RFP . . . .

AR 1672.

Plaintiff filed its suit here on June 13, 2017. Plaintiff's complaint alleges that NIH acted arbitrarily and capriciously when it failed to seek clarification of the FreeAlliance proposal; failed to refer its decision to the SBA for a Certificate of Competency determination; and eliminated the FreeAlliance proposal for an alleged clerical error rather than on its substance. After the filing of the Administrative Record, plaintiff moved for judgment on the administrative record. Plaintiff argues that NIH acted

9

arbitrarily and capriciously by finding its proposal unacceptable and that the FreeAlliance proposal received unequal evaluation in violation of federal procurement principles. Defendant filed a cross-motion for judgment on the administrative record.

DISCUSSION

This court has jurisdiction over challenges brought by interested parties to actions taken by federal agencies in connection with pre- and post-award procurement actions. *See* 28 U.S.C. § 1491(b)(1) (2012). To prevail, the protester must establish that the agency acted arbitrarily and capriciously, abused its discretion, or conducted itself in a manner that is otherwise not in accordance with law. *Id.* § 1491(b)(4) (mandating that the court review agency decisions pursuant to the standards set forth in the Administrative Procedures Act, 5 U.S.C § 706 (2012)). Our standard of review is a deferential one, requiring only that the agency had a rational basis for its decision and observed any applicable law or regulation during the procurement process. *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009). Even if a reasonable person might have reached a different conclusion, we will not set aside the agency's determination unless the protestor can show some irrationality or violation of law or regulation. *Redland Genstar, Inc. v. United States*, 39 Fed. Cl. 220, 231 (1997). Plaintiff must also "show that it was prejudiced by a significant error in the procurement process," by demonstrating that, had it not been for the error, plaintiff had a reasonable likelihood of being awarded the contract. *Labatt Food Servs., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009). To carry its burden, FreeAlliance advances three arguments regarding the agency's evaluation of its bid under the Go/No-Go requirements.

I.  Whether The Agency Was Arbitrary And Capricious When It Excluded FreeAlliance For Noncompliant Verifications Submitted By HealthTech And Nish

First, plaintiff argues that the agency was arbitrary and capricious when it excluded HealthTech's and Nish's verifications as noncompliant with the requirements of the RFP. The government responds that HealthTech and Nish submitted facially noncompliant verifications based on the language of the RFP.

In the procurement process, the offeror is responsible for ensuring its proposal complies with the requirements of solicitation; the agency has no

duty to correct an offeror's mistakes during the procurement process. *See Mercom, Inc. v. United States*, 131 Fed. Cl. 32, 40 (2017). The RFP provided four options for verifying an adequate accounting system: DCAA audit, DCMA audit, a federal civilian agency audit, or a third-party CPA audit. The first two options demonstrate that the agency was seeking substance in its verification of an adequate accounting system. A DCAA or DCMA audit would be performed according to a standard that would assure the government that the offeror could adequately track and account for its costs under a cost reimbursement contract. FreeAlliance itself elected to submit to a DCAA audit, which provided a detailed review of the adequacy of its accounting system to determine costs applicable to a contract.

On the other hand, FreeAlliance's CTA members submitted verifications using the third-party CPA option. Any verification was required to provide that the system have been "audited and determined adequate for determining costs applicable to this contract in accordance with FAR 16.301-3(a)(1)." AR 496. In addition, when using a third-party CPA, "the verification letter shall be on the letter head of the third-party CPA firm . . . ." *Id.* Neither HealthTech nor Nish provided a verification on CPA letterhead. The origin of their verification forms is uncertain; FreeAlliance stated during oral argument that they were likely from a past solicitation.

As to the substance of the verifications, HealthTech's verification states that a DCAA audit [                                    ]. Form language at section three recites that "a third-party accounting review was conducted and the accounting system found to be adequate." AR 675. HealthTech states in a footnote, however, "HealthTech has engaged [
    ] to conduct a third-party review of the design of accounting system controls in place." *Id*. Plaintiff asserts that, taken together, these sentences mean that a review occurred by [                    ] prior to the verification submission. The government responds that NIH understood the language, "has engaged" the CPA "to conduct" a review, to mean that the review had not yet taken place at the time of submission. Neither the form language nor the footnote recites whether the system was adequate for determining costs for a cost reimbursement task order.

Although both readings may be reasonable, FreeAlliance had the responsibility of meeting the RFP requirements and now bears the burden to prove that the agency was arbitrary and capricious in excluding its proposal for noncompliance. We accept the government's insistence on compliance with the letterhead provision, because the letterhead adds credibility to the

third-party verification as contrasted with plaintiff's form, which is devoid of any comparable authentication. Further, the agency did not act arbitrarily when it read HealthTech's footnote to mean that the required verification had not yet occurred. HealthTech's verification was noncompliant due to its lack of third-party CPA letterhead. When the format error is combined with the ambiguous, limited substance, NIH chose a reasonable response of deeming the verification unacceptable.

Nish submitted the same verification form as HealthTech, but its verification form [                    ]. A CPA signed after the statement, "[H]owever, a third-party accounting firm review was conducted and the accounting system found to be adequate." AR 676. Nish's verification similarly lacks a CPA letterhead and provides no detail regarding the depth or type of review or that the system is adequate for determining costs applicable to the contract. Due to the deficiencies, the agency's review of this form was not arbitrary.

FreeAlliance argues that, as it had designated itself as Team Lead and [                                              ], its accounting verification should be given more weight than its accompanying CTA members' verifications. Yet the RFP did not provide an exception for compliant verifications if a firm was not the CTA Team Lead. All members of the CTA were required to provide verification of an adequate accounting system. Thus, the agency was not arbitrary or capricious in applying the language of the instructions set out in the RFP to find the HealthTech and Nish verification unacceptable.

II.     Whether The Agency Evaluated Offerors' Verification Of Adequate Accounting System Unequally

Plaintiff next argues that the agency did not consistently apply the same standard for an acceptable accounting system verification to other offerors. Plaintiff points to several categories of what it contends was unequal treatment, including NIH deeming acceptable verifications that lacked substance, lacked citation to FAR part 16.301-3(a)(1), lacked signature by a CPA firm rather than a CPA, or provided an individual CPA's letterhead rather than a firm letterhead.

It is a foundational principle that "a contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria." *Banknote Corp. of Am. v. United*

12

*States*, 56 Fed. Cl. 377, 383 (2003), *aff'd*, 365 F.3d at 1345. Here, we find that the contracting agency treated FreeAlliance equally with the other offerors. Among the verifications that plaintiff relies on to demonstrate unequal treatment, no verification that NIH found acceptable was identical to the form that HealthTech and Nish submitted.

Nevertheless, some of the verifications involved deficiencies similar to those for which FreeAlliance was excluded. Most concerning among the offerors plaintiff highlights are [           ] (a [              ] CTA member) and [         ] (a [  ] CTA member). [     ] provided a verification on CPA firm letterhead that stated the firm had reviewed [     ] financial statements and noted that [         ] used a contractor accounting software. The government concedes in its response to plaintiff's motion that [        ] verification was unacceptable, despite a pre-decisional spreadsheet reflecting that the verification was acceptable. Although NIH marked the verification acceptable, the [            ] CTA did not receive a "Go" for phase one because, during the same evaluation, NIH marked the proposal unacceptable under factor one for compliance with the RFP requirements. Defendant thus contends that the preliminary rating, although indeed inconsistent with plaintiff's treatment, should be ignored.

Similarly, [  ] submitted a faxed certification from a third-party that was not on letterhead. The government argues that, even though the pre-decisional spreadsheet marked [    ] submission acceptable, [ ] was in fact excluded under factor one because its proposal was not otherwise compliant. Plaintiff also points out that [    ] CTA member [   ] submitted a nonresponsive document unrelated to the required verification rather than a compliant accounting system verification. Regarding [ ], the government responds that the pre-decisional spreadsheet made note of the deficiency.

Plaintiff asserts that it is irrelevant that the [            ] CTA and the [  ] CTA did not advance to the phase two evaluation due to factor one noncompliance. NIH unequally evaluated its proposal as compared to the [             ] CTA and the [   ] CTA, plaintiff argues, because FreeAlliance's CTA members were marked unacceptable for noncompliant verifications whereas [    ] and [     ] were marked acceptable for likewise noncompliant verifications. The government responds that four reviewers simultaneously evaluated the four phase one Go-No/Go requirements and, even in the event that mistakes were made

13

regarding individual CTA member's submissions, the final "Go" or "No-Go" for overall compliance should be controlling.

The administrative record, to which this court is limited in its review, does not discuss how the review occurred or how the pre-decisional spreadsheet was developed. *See* Rules of the Court of Federal Claims 52.1. We are reluctant, however, to hold that unequal treatment was present here when the apparent unequal treatment is embedded in a single, larger evaluation phase, the net outcome of which is that the other offerors were rejected. None of the offerors with noncompliant features in their proposals that FreeAlliance relies on proceeded to phase two evaluation.

FreeAlliance also asserts that NIH unequally evaluated other offerors' verifications with respect to the substance of their representations. Our review of the record, however, indicates that, as detailed below, NIH had a rational basis for accepting each verification based on its substance.

[          ] (a [                          ]    CTA member) submitted a SF 1408 prepared by a third-party CPA, detailing [               ] accounting system methods and capabilities. The SF 1408 is a government form utilized by DCAA and requested by the RFP. Plaintiff is correct that the third-party CPA did not use the language "audited" or "reviewed," but the CPA did represent that the accounting system was acceptable, noting a specific list of the current accounting system features and that the offeror was updating the system. Plaintiff's verifications, by contrast, were not on a standard government form, and the form plaintiff chose lacked any details about the purpose of the review or the adequacy of the accounting systems for any relevant purpose.

Plaintiff asserts that [           ] (an [              ] CTA member) did not provide a responsive verification. The government responded that the [          ] Go/No-Go evaluation is currently under review due to a bid protest. In the context of this protest, however, [          ] is distinguishable from FreeAlliance's verifications. [          ] complied with the letterhead requirement. Also, although its CPA stated "[w]e have not audited, reviewed, or performed internal control reviews of the LLC in the past," he continued, "we believed their accounting and billing systems can adequately track contracts costs and billings for the purpose of providing to us the information necessary to prepare the LLC's annual income tax returns." Although [      ] could have submitted a more substantial verification, at a minimum it provided NIH more substance

in its verification than FreeAlliance's forms.

During oral argument, FreeAlliance also pointed to [                ] and [                      ] as examples of disparate treatment. The third-party CPA letter for [            ] was on CPA firm letterhead and signed by an individual CPA who stated that [            ] "has more than an adequate accounting system for government contracting." AR 978. The letter also represented that the accounting system could accumulate and report costs and that it was DCAA compliant ready.

[            ] verification was on letterhead, described [            ] accounting system, and stated that the letter was prepared using procedures specified in the SF 1408. [            ] verification discussed in detail the ability of [            ] accounting system to verify, track, and report costs. Thus, these two verifications differ from HealthTech and Nish due to the letterhead compliance and because they provided more detail than either HealthTech or Nish. The two letters also did not create ambiguity regarding the origin of the form, who wrote the content, or whether a review had taken place prior to submission.

At oral argument, FreeAlliance also alleged that [    ] provided the same form for verification as HealthTech and Nish. In fact, the [    ] form was more detailed than the Nish form because it stated that the accounting system was adequate "for cost type federal contracts." AR 1209. More importantly, NIH deemed the [   ] form unacceptable.

Plaintiff is correct that some accepted verifications used language ranging from "audit" to "review" to "verify." Despite the individuality in other offerors' verifications, each is distinguishable from the forms submitted by HealthTech and Nish in that the other offerors provided more context and detail to demonstrate to NIH that the accounting system had been reviewed for its ability to track costs for a cost reimbursement contract. When considering a Go/No-Go factor that was directly relevant to the type of contract contemplated, NIH did not abuse its discretion or unequally evaluate offerors when it determined that FreeAlliance missed the mark in both form and substance.

Plaintiff also points out that several offerors did not explicitly reference FAR part 16.301-3(a)(1) in their verifications. The RFP did not require an explicit reference to the FAR provision, however. Nor was FreeAlliance excluded for the lack of such a citation. NIH employed its

discretion in determining which verifications provided sufficient assurance of compliance with the substance of the FAR provision.

Plaintiff also lists several offerors who submitted verifications signed by a CPA firm rather than an individual CPA. Plaintiff argues that the RFP required the verification be "certified by a certified public accountant," not by a CPA firm. AR 496. The government argues in its motion that it is standard practice in the field of accounting to use the firm's signature rather than an individual's signature and that NIH was aware of this practice.[6] Plaintiff is correct that this practice is not referenced in the administrative record. Yet regardless of whether an individual or firm signed the verification, the offerors plaintiff points out did submit verifications with a CPA signature of some kind. We are not persuaded that acceptance of a CPA firm's signature was an abuse of discretion by NIH.

III.   Whether The Agency Engaged In Improper Discussions With Other Offerors Or Was Required To Engage In Discussion With FreeAlliance

Plaintiff alleges that NIH engaged in improper discussions with other offerors, with the result that those offerors proceeded to the phase two evaluation. Plaintiff argues that the agency ought to have notified FreeAlliance that it could clarify its verifications. We note initially that the government is correct in its response that the record reflects no "discussions" with other offerors, as defined by the RFP or FAR part 15.306. The agency engaged in only clarifications to correct minor clerical points in proposals, which is permissible under FAR part 15.306(a). Second, plaintiff has not submitted any document in verified form suggesting that it could have satisfied the verification requirements.

Plaintiff's argument that the agency engaged in improper discussion with [          ] fails, because the agency was verifying the information submitted, not requesting a change. [               ] submitted a verification from a third-party firm, [               ], on that firm's letterhead, discussing the accounting system and attaching a

---

[6] The government references the "American Institute of Certified Public Accountants (AICPA) Statements on Auditing Standards AU paragraph 508.08, which requires the hand written or the printed signature of the auditor's firm." Def.'s Cross-Motion J. Admin. R. 28-29.

16

completed SF 1408. Upon review, an agency employee noted "may not be a CPA, is Govt Contracting Consultant. [sic] Natalie requesting CPA License Number." AR 807.10. Rather than requesting additional substance or a new compliant submission, the agency was confirming the CPA license number of the person who signed the verification. That was a permissible clarification, not improper discussion.

By comparison, if we accepted plaintiff's argument, NIH would have requested HealthTech and Nish to resubmit their verifications to include a letterhead and more detail regarding whether a review of their accounting systems had occurred and the content of that review. Instead of confirming already-provided information, NIH would have allowed FreeAlliance to alter its verification—an opportunity that NIH expressly denied to Fedscale. AR 941.43.

Plaintiff also points to several offerors who received phase one "Go—with clarification," but who would be required to provide their DUNS number before award. Others did not include the 360-day acceptance period in their offers or did not acknowledge Amendment 0004 as required by the RFP. Still others would be required to acknowledge their agreement with the RFP's terms, conditions, and provisions and that the government must approve any CTA member replacement. The government responds that these offerors received "Go—with clarification" in phase one, because each of these deficiencies were either minor clerical errors or acknowledgments that would be required again later in the acceptance process.

We agree that the agency did not abuse its discretion by allowing these offerors to move forward as "Go—with clarification." These requirements are all distinguishable from the verification of an adequate accounting system, which is a substantive step toward demonstrating preparedness for contract award rather than a number or acknowledgment that could be clarified without changing the substance of an offeror's proposal. The agency was not required to extend HealthTech or Nish the opportunity to correct its verification and we will not substitute our judgment for the agency's to allow corrections now.

## CONCLUSION

The agency's actions were not arbitrary and capricious, an abuse of discretion, or otherwise in violation of law. Accordingly, plaintiff's motion for judgment on the administrative record is denied. Defendant's cross-

motion is granted. The Clerk is directed to enter judgment for the defendant. No costs.

s/Eric G. Bruggink
Eric G. Bruggink
Senior Judge
